### JACKSON v. LITTLE et al.

No. 14883—Opinion Filed Dec. 2, 1924.

Rehearing Denied May 5, 1925.

**Libel and Slander—Joint Authors—Demurrer to Evidence—Prejudicial Error.**

In an action for libel, where the evidence discloses that an alleged libelous letter was actually written by one not a party to the litigation, but that his act in writing such letter was authorized by one who is a defendant and whose name was signed thereto by the writer with full authority, many of the substantive statements in such letter being suggested to the writer by the defendant whose authorized signature appears thereon, the liability, if any exists, is joint and several, and it is therefore prejudicial error to sustain a demurrer to plaintiff's evidence as to such defendant on the ground that he did not write the letter. And this is especially true where the remaining defendant can be held, if at all, only under the rule of respondeat superior.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; James I. Phelps, judge.

Action by R. A. Jackson against J. H. Little, Missouri, Kansas & Texas Railway Company, a corporation, and Chas. E. Schaff, receiver of Missouri, Kansas & Texas Railway Company, for damages. Demurrer to the evidence was sustained as to J. H. Little and the Missouri, Kansas & Texas Railway Company, a corporation. Verdict in favor of the defendant Chas. E. Schaff, receiver of Missouri, Kansas & Texas Railway Company, and plaintiff brings error. Reversed and remanded.

This is an action to recover damages for an alleged libelous publication of and concerning the plaintiff, the alleged libel consisting of a letter written by J. H. Little, division superintendent, to certain other employes of the railway company.

In the view taken of the case in this court it is not necessary to set forth the communication upon which the action is based for the reason that its legal effect will not be determined in this proceeding.

Plaintiff's petition was filed in the district court January 14, 1922. Defendants each filed separate answers. The answer of J. H. Little and Chas. E. Schaff, receiver, each consisted of a general denial and the affirmative defense that the letter was written to employes who had a like interest with defendant in the subject-matter of the communication and in the performance of the duty in reference to which the letter was written, and that the same was written in good faith without malice, ill will, or evil intent, and that the communication was both privileged and qualifiedly privileged.

The answer of the Missouri, Kansas & Texas Railway Company consisted of a general denial, and affirmatively stated that all of the properties of said defendant were in the hands of and being operated by Chas. E. Schaff, as receiver, under order of the United States District Court for the Eastern Division of the Judicial District of the state of Missouri, and alleging that by reason thereof if plaintiff had any cause of action it was against the said receiver and not against the corporation. Reply was filed to these separate answers. Thereafter the case was tried to a jury January 5, 1923. At the close of plaintiff's evidence the court sustained a demurrer to the evidence in behalf of J. H. Little and the Missouri, Kansas & Texas Railway Company, and at the conclusion of all the testimony there was a verdict in favor of the receiver and against the plaintiff, upon which verdict judgment was entered. After unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review.

Warren K. Snyder, for plaintiff in error.

M. D. Green and H. L. Smith, for defendants in error.

Opinion by LOGSDON, C. First to be considered in this case is a motion by defendant to dismiss the appeal for the reason that it appears affirmatively that the case-made was not filed in the office of the court clerk after the same was settled and signed by the trial judge. This motion would have to be sustained were it not for the fact that this court on September 2, 1924, on motion of plaintiff, entered its order permitting the case-made to be withdrawn for the purpose of amending the same by having placed thereon the file mark of the court clerk in conformity with the record in that office, it appearing that the civil appearance docket showed at page 261 that this case-made was filed November 9, 1923, and that it was withdrawn for filing in this court. By virtue of the

provisions of Comp. Stat. 1921, sec. 786, this amendment was proper and cured the defect. The motion to dismiss should therefore be denied. McCann v. McCann, 96 Okla. 250, 221 Pac. 499.

Upon the merits of the case, plaintiff's first complaint is against the action of the trial court in sustaining the separate demurrers of defendants Missouri, Kansas & Texas Railway Company and J. H. Little to the evidence of plaintiff.

As to the action of the trial court in sustaining the demurrer to plaintiff's evidence as against the defendant, Missouri, Kansas & Texas Railway Company, it is not considered that any prejudicial error was committed in this respect. The testimony introduced on behalf of plaintiff showed conclusively that the Missouri, Kansas ° Texas Railway Company was in the hands of a receiver long prior to the employment of plaintiff, and that such receivership continued during all of the time that he was so employed and thereafter. The possession of the receiver is not the possession of the corporation, but is an adverse possession, and the corporation as an entity exercises no control whatsoever over the receiver or his employes. The wrongful act complained of by the plaintiff was committed by employes, and the railroad's property being then in the hands of a receiver, the railroad company, as a corporate entity, owed no duty to the plaintiff which the acts of the receiver's employes could violate.

The action of the trial court in sustaining the demurrer of defendant J. H. Little to plaintiff's evidence is deemed to have been erroneous upon the state of the record at the close of plaintiff's testimony. Defendant Little was placed upon the stand as a witness for the plaintiff, and the following excerpts from his testimony are believed to demonstrate the error of the court in sustaining his demurrer to the plaintiff's evidence. It appears from his testimony that one Ross, who was chief clerk in Little's office, wrote the letter complained of, and while Mr. Little asserted that he knew nothing of the writing of the letter it is disclosed by his testimony that he did know of facts and circumstances which reasonably charged him with knowledge of the writing of said letter, to which his name was signed by Ross with full authority. The material portions of his testimony are as follows:

On direct examination:

"Q. Did you find who wrote it? A. That is, as a matter of (fact) at that time, yes, sir. Q. Who did you find wrote it? A. Why, Mr. Ross, it appears, the chief clerk in the office, dictated the letter. Q. Mr. Ross had authority under you to write the letter? A. He is chief clerk of the division office of this railroad and has charge of the clerks, to employ. Q. Under you? A. Yes, sir. Q. And in your name to employ and discharge parties under your division or under your jurisdiction. A. Those coming under his jurisdiction, yes, sir. Q. Well, under your jurisdiction; you have jurisdiction over him? A. Yes, sir. * * * Q. Did you have any talk with your chief clerk about these things, beginning in the matter of Mr. Jackson wasn't working satisfactorily and he wasn't a stenographer and he put his feet on the desk and that he received notice from time to time standing around looking out the window and that somebody else saw him quit early; you knew about those things, did you, and discussed them with your chief clerk? A. To some extent I did; I complained to the chief clerk that I had seen Mr. Jackson sitting in his office not engaged, and on one occasion I complained to the chief clerk that Mr. Jackson was apparently not kept very busy, and I complained to him that I saw him sitting at his desk looking out of the window and on one or more occasions saw him with his feet on the table when I knew there was plenty to do in that office to keep every person there busy, and I complained to the chief clerk along those lines."

On cross-examination:

"Q. Now, you stated, I think, on direct examination that you had some conference with Mr. Ross and about a Mr. Bawart taking this place that was held by Mr. Jackson; if you recall state what that was. A. On or about the middle of November, I don't recall just what time, the chief clerk mentioned it to me that Mr. Bawart had filed an application in writing, in line, or in compliance with the clerk's national agreement to exercise his seniority, and he requested that he be permitted to bump Mr. Jackson and take charge of that job because he was the senior employe, and I said to the chief clerk that that is all right; that if Mr. Bawart was a senior employe he had that right to place himself according to the seniority, and I had that understanding with the chief clerk about the middle of November; I don't recall exactly what date."

On re-direct examination:

"Q. You did know then prior to the writing of this letter, that was just an ultimate penalty, you were going to bump Jackson and put Bawart in; you and the chief clerk had discussed that, had you not? A. I knew it to this extent: Bawart was going to exercise his seniority and bump Mr. Jackson. Q. And you told the chief clerk that would be all right? A. I attended to the change all right. Q. And that was before this letter was written? A. Now, I can't say just what time that took place, but it was about the middle of November or a little later or

sometime in November; a very short time before Mr. Jackson was disposed of. * * * Q. But you told the chief clerk to see that the bumping went on? A. He knew; I didn't tell him about it: it went on when he said to me Mr. Bawart desired to exercise his seniority, and I gave him permission."

It is thus clearly apparent from the testimony of defendant Little that his chief clerk, Ross, believed that he had authority from Little to write the letter in question. Practically every substantive matter contained in the letter had been discussed between Little and Ross, and some of these matters had been first broached by Little himself in the form of complaints to Ross about Jackson's idleness. Whether Ross exceeded his authority in incorporating in the letter the substance of these private conversations with his superior is not material to the present inquiry, but that he had express as well as implied authority to write the letter cannot be seriously questioned under the evidence above quoted. This being true, the act of Ross was the act of Little, and if the letter written by Ross constituted an actionable wrong against Jackson, it follows that Little would be jointly and severally liable. The jury might, and probably did, consider that if the defendant who was directly responsible for the writing of the letter was not legally liable therefor the receiver should not be held liable. That the demurrer must have been sustained on the sole ground that Little did not write the letter is evident from the fact that the court overruled the demurrer of the receiver on exactly the same evidence. This error of the court is therefore deemed to have been prejudicial to the substantial rights of the plaintiff.

This action of the trial court was duly excepted to, was called specifically to the attention of the trial court in the motion for new trial, and is preserved in the petition in error filed in this court. While it is true, that the case-made as originally filed in this court did not show any exception to the overruling of the motion for new trial, this court made an order permitting the case-made to be withdrawn for correction in this respect. This has been done, and the case-made as amended has been again certified by the trial judge, the transcript of the proceeding showing that exception was duly reserved to the action of the trial court in overruling the motion for new trial. The showing made on the proceeding to amend the case-made is deemed sufficient to sustain the amendment.

The second assignment of error complains of the refusal of the trial court to give certain requested instructions. but this assign-

ment cannot be considered here for the reason that no requested instructions are contained in the case-made.

The third assignment of error complains of the giving of certain instructions numbered 1 to 13, both inclusive, but this assignment is likewise unavailable in this court for the reason that is disclosed by the case-made that no exceptions were reserved to the giving of such instructions.

This condition of the record likewise precludes this court from considering and passing upon the fourth assignment of error, which reads:

"Said court erred in rendering judgment for the defendants in error and against the plaintiff in error for that such judgment was contrary to the evidence and not sustained by the evidence and the same is not sustained by the law, but the same is contrary to the law."

Because of the error of the trial court in sustaining the demurrer of the defendant Little to the evidence of the plaintiff, which error is deemed to have been prejudicial to the substantial rights of the plaintiff, this cause should be reversed and remanded for a new trial.

By the Court: It is so ordered.